UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AHMAD ABDULLAH,

       Plaintiff,

vs.                              Case No.  3:12-cv-1037-J-34MCR

AMERICAN EXPRESS COMPANY, d/b/a
American Express Travel,

       Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Compel Arbitration

and Dismiss Case (Doc. 5) filed September 26, 2012.  Plaintiff filed his response in

opposition to this Motion on October 4, 2012.  (Doc. 7).  After obtaining permission,

Defendant filed a Reply (Doc. 12) on November 1, 2012.  On November 6, 2012, Judge

Howard referred the Motion to the undersigned for preparation of a Report and

Recommendation.  (Doc. 14).  Accordingly, the matter is now ripe for judicial review.

### I.  BACKGROUND

On August 24, 2012, Plaintiff filed the Complaint in this case in state court

alleging discrimination based on his race and gender in violation of the Florida Civil

Rights Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. §1981.  (Doc. 2).  In

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

response, Defendant filed the instant motion seeking to compel arbitration of Plaintiff's claims and to have the case dismissed.

In support of its Motion to Compel Arbitration, Defendant provided an affidavit from Arlene McKane, Defendant's Human Resources Manager.  Ms. McKane explained that Defendant first began utilizing an Arbitration Agreement with its employees on June 1, 2003.  Any employee hired on or after that date was a party to the agreement. Employees hired prior to June 1, 2003 were not subject to the Arbitration Agreement. Plaintiff was hired on May 19, 1997.

In 2007, Defendant decided to revise its Arbitration Agreement and to extend its coverage to all U.S. employees, including those hired prior to June 1, 2003.  Ms. McKane was responsible for coordinating the rollout of the Employment Arbitration Policy for all American Express employees hired prior to June 1, 2003.  The rollout started with an email announcement on August 13, 2007 from Lori Sundberg, Vice President, Employee Relations, Compliance and Corporate Safety, sent to all of Defendant's employees in the United States.  Employees, like Plaintiff, hired before June 1, 2003, were given the option to decline or to opt-out of the Arbitration Agreement with no impact on their employment with Defendant.  The email informed employees that they would be covered by the Arbitration Agreement automatically if they did not complete and return the opt-out form to the Employee Relations Service Center in Greensboro, North Carolina within 45 days of receiving the form.  Additionally, the email stated that all affected employees would be receiving a packet of information about the Arbitration Agreement, including the Agreement itself and the opt-out form with

instructions.  Copies of the opt-out form as well as frequently asked questions were also provided on Defendant's Intranet for all employees to access online.

On August 17, 2007, Defendant mailed the Arbitration Agreement packet[2] to Plaintiff via certified mail, return receipt requested.  The address on record for Plaintiff at the time was 1299 Brighton Ridge Court in Jacksonville, Florida.  Defendant received the signed receipt card back from Plaintiff.  It appears the receipt was signed by Paula Abdullah, Plaintiff's wife at the time.  Defendant also included a memorandum reminding employees about the opt-out process in the September 28, 2007 paycheck statement for all employees.

Defendant never received an opt-out card from Plaintiff.  In January 2008, Defendant sent a letter to all employees who did not opt-out of the Arbitration Agreement confirming their participation in the Agreement.

In his response to the Motion to Compel Arbitration, Plaintiff submitted an affidavit in which he stated he was never aware of the Arbitration Agreement.  Specifically, Plaintiff claimed he did not receive the email sent from Defendant on August 13, 2007.  Additionally, Plaintiff alleged he did not live at 1299 Brighton Ridge Court during the year 2007.  According to Plaintiff, the return receipt card was signed by his ex-wife, Paula Abdullah and he was never shown the Arbitration Agreement packet.  Plaintiff further stated he did not receive the correspondence included in the September 28, 2007 paycheck because he was paid via direct deposit.  Finally, Plaintiff alleged he

---

[2]  The Arbitration Agreement packet included: (1) a cover memorandum regarding the Arbitration Agreement, (2) frequently asked questions and a document entitled: "Things to Consider About Arbitration," (3) the opt-out form, and (4) the Arbitration Agreement.

did not receive the letter in January 2008 confirming his participation in the Arbitration Agreement, nor did he receive a memorandum doing the same.

In its Reply, Defendant included a copy of the state court file for Plaintiff's divorce from Paula Abdullah. Additionally, Defendant included affidavits from three of its employees. The divorce file includes a Petition signed by Plaintiff and notarized in April 2008 indicating Plaintiff's address was 1299 Brighton Ridge Court. (Doc. 12, Ex. 1, p.8). Further, the file includes numerous documents prepared in 2008 in which Plaintiff swore or affirmed under oath that his address was 1299 Brighton Ridge Court. Additionally, a copy of Plaintiff's driver's license is included on a handwritten page titled "Proof of Residency" in which Plaintiff's address is listed as 1299 Brighton Ridge Court and the same address is listed on the driver's license. This document was file stamped on September 22, 2008. The final judgment of dissolution was entered on October 13, 2008. Indeed, all of the documents in the state court divorce proceedings reflect Plaintiff's address as 1299 Brighton Ridge Court until a Notice of Hearing dated September 28, 2009 in which Plaintiff's address is noted as 5942 Wind Cave Lane.[3]

Defendant also included an affidavit from Elizabeth Campbell, a human resources manager with Defendant. Ms. Campbell testified that according to Defendant's records, Plaintiff changed his address from 1299 Brighton Ridge Court to 5942 Wind Cave Lane on December 18, 2008. (Doc. 12, Ex. 2).

---

[3] The Court directed Plaintiff to file a sur-reply addressing the allegations that as of August and September 2007, he was still residing at 1299 Brighton Ridge Court. (Doc. 16). Plaintiff did so on December 13, 2012 and provided an affidavit stating he did not live at 1299 Brighton Ridge Court during his divorce proceedings. (Doc. 19, Ex. A). Instead, Plaintiff testified that starting in April 2007, he was living with his girlfriend, now wife, Forenda Abdullah, at 10100 Baymeadows Road. Id.

Next, Defendant provided another affidavit from Ms. McKane.  In this affidavit, she explained that even employees who were paid by direct deposit received notice of the Arbitration Agreement.  Rather than including the memorandum in the envelope with the paycheck, those employees paid via direct deposit received an email with the August 13, 2007 memorandum regarding the Arbitration Agreement.  (Doc. 12, Ex. 3).

Finally, Defendant included an affidavit from Ric P. Cox, an IT Information Security Specialist working for Defendant.  Mr. Cox testified he searched the Lotus Notes custodian archives for both Plaintiff's and Lori Sundberg's email.  He was able to find the August 13, 2007 email from Ms. Sundberg regarding the Arbitration Agreement. The email contained links allowing the recipient to view the Agreement itself as well as the documents explaining the Agreement and the opt-out form.  Further, the email identified the recipients and Plaintiff's name was included as a recipient.  (Doc. 12, Ex. 4).

## II.  ANALYSIS

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16 (2006), provides the substantive law controlling the validity and enforcement of covered arbitration agreements.  "The FAA embodies a liberal federal policy favoring arbitration agreements."  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted).  As provided by the Act, when a party moves a court to compel arbitration pursuant to an arbitration agreement:

> The court shall hear the parties, and upon being satisfied
> that the making of the agreement for arbitration or the failure
> to comply therewith is not in issue, the court shall make an
> order directing the parties to proceed to arbitration in
> accordance with the terms of the agreement. . . .  If the

> making of the arbitration agreement or the failure, neglect, or
> refusal to perform the same be in issue, the court shall
> proceed summarily to the trial thereof.  If no jury trial be
> demanded by the party alleged to be in default, . . . the court
> shall hear and determine such issue. . . .

9 U.S.C. § 4.  Through this provision, Congress expressly assigned the duty of deciding

issues concerning the "making of the arbitration agreement" to the courts.  Id.

In ruling on a motion to compel arbitration, courts consider three factors: "(1)

whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue

exists; and (3) whether the right to arbitrate was waived."  Florida Farm Bureau Ins.

Companies v. Pulte Home Corp., No. 8:04-cv-2357, 2005 WL 1345779, at *3 (M.D. Fla.

June 6, 2005).  As the only factor at issue in the present case is whether a valid written

agreement to arbitrate exists, the Court will focus its examination on that factor.

## A.   Whether a Valid Arbitration Agreement Exists

In the instant case, Plaintiff takes the position that no valid agreement to arbitrate

exists because he was never made aware of the Arbitration Agreement.  As noted

above, Plaintiff claims he never received the original August 13, 2007 email from Lori

Sundberg.  Further, Plaintiff alleges he did not see the Arbitration Agreement packet

sent to 1299 Brighton Ridge Court and signed for by his wife, Paula Abdullah, because

he was not residing at 1299 Brighton Ridge Court at the time and Paula Abdullah did

not share it with him.  Plaintiff also alleges he did not receive the notice sent with

paychecks in September 2007 because he was paid via direct deposit.  Finally, Plaintiff

states he did not receive the final letter in January 2008 confirming his participation in

the Agreement.

The FAA establishes a "federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983). Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25; see also Ruby-Collins, Inc. v. City of Huntsville, Ala., 748 F.2d 573, 576 (11th Cir. 1984) ("[F]ederal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration."). However, when determining whether a valid arbitration agreement exists, the court must consider both the federal policy favoring arbitration agreements as well as applicable state contract law.  As the Eleventh Circuit has explained:

> in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts.  The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.

Caley, 428 F.3d at 1367-68 (citations and quotation marks omitted).

Doing just that, the Eleventh Circuit held that when a party denies the existence of a valid arbitration agreement, "that party must substantiate the denial of the contract with enough evidence to make the denial colorable." Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 855 (11th Cir. 1992).  "A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists." Id.  Rather, "[t]o make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate the denial." Id. at 854 (alterations omitted) (quoting T&R Enterprises, Inc. v. Cont'l Grain Co., 613 F.2d 1272, 1278 (5th Cir. 1980)).

In the instant case, Plaintiff argues he has met his burden to demonstrate the non-existence of an agreement to arbitrate.  As there is no signed agreement, the analysis of <u>Chastain</u> applies.  Plaintiff unequivocally denies that he agreed to the Arbitration Agreement.  Therefore, the first part of the <u>Chastain</u> test is satisfied.  As for the second part of the test, Plaintiff believes he has successfully "substantiate[d] the denial of the contract with enough evidence to make the denial colorable."  <u>Chastain</u>, 957 F.2d at 855.  Plaintiff has certainly created a fact issue as to whether he received the Arbitration Agreement packet mailed to 1299 Brighton Ridge Court and if that were the only notice provided to him, the Court would agree that has satisfied his burden.  However, Defendant provided affirmative evidence showing that the August 13, 2007 email was sent to Plaintiff.  That email provided Plaintiff with all of the documents contained in the Arbitration Agreement packet.  Plaintiff's affidavits stating that he did not receive any of the notices sent by Defendant is not enough.

The facts in the instant case are similar to those in two cases cited by Defendant: <u>Rivera v. AT&T Corp.</u>, 420 F.Supp.2d 1312 (S.D. Fla. 2006) and <u>Sanders v. Comcast Cable Holdings</u>, LLC, No. 3:07-cv-918, 2008 WL 150479 (M.D. Fla. Jan. 14, 2008).  In these cases, the plaintiffs filed affidavits stating they did not receive notice of an arbitration agreement.  The defendants in each case presented evidence that they mailed the arbitration agreements to the plaintiffs at their current addresses.  The courts observed that the plaintiffs' affidavits simply stating they did not receive the agreements were insufficient to create a genuine issue of fact as to whether an agreement was reached because they did "not rise to the level necessary to rebut the presumption of receipt created when such Arbitration Notices were mailed to Plaintiffs."  <u>Sanders</u>, 2008

WL 150479, at *6; see also Rivera, 420 F.Supp.2d at 1320-21.  In the instant case,

Defendant presented proof showing affirmatively that the August 13, 2007 email was

sent to Plaintiff.  Accordingly, Plaintiff's affidavit simply stating that he did not receive it

is insufficient to create a genuine issue of fact.

　　　While this case deals with electronic mail rather than mail sent through the U.S.

Postal System, the undersigned sees no reason why the same presumption of delivery

would not be applicable.  The Eleventh Circuit has not addressed this issue, however,

the Eighth Circuit has observed:

> We agree with the district court that a presumption of
> delivery should apply to e-mails. "A jury is permitted to infer
> that information sent via a reliable means-such as the postal
> service or a telegram-was received." Kennell v. Gates, 215
> F.3d 825, 829 (8th Cir. 2000).  We have held that there is "no
> principled reason why a jury would not be able to make the
> same inference regarding other forms of communication -
> such as facsimiles, electronic mail, and in-house computer
> message systems - provided they are accepted as generally
> reliable and that the particular message was properly
> dispatched." Id.

American Boat Co., Inc. v. Unknown Sunken Barge, 418 F.3d 910, 914 (8th Cir. 2005).[4]

As Defendant has provided evidence showing the August 13, 2007 email was properly

delivered to Plaintiff, the undersigned believes a rebuttable presumption was created

that Plaintiff received that email.  Plaintiff did nothing more than provide an affidavit

stating he did not receive the email.   As in the Sanders and Rivera cases, the

undersigned finds the mere statement in his affidavit that he did not receive the email is

---

　　　[4]  Additionally, the Kennell case was cited favorably by Judge Benton of the First Circuit
Court of Appeals in Florida in his dissenting opinion in Mendelsohn v. Florida Unemployment
Appeals Commission, 851 So.2d 208, 211 (Fla. 1st DCA 2003).

"insufficient to create a genuine issue of fact as to whether an agreement was reached"

because it does not rise to the level necessary to rebut the presumption of receipt

created when Defendant showed it emailed the Arbitration Agreement to Plaintiff.  See

Sanders, 2008 WL 150479.

**B.**   **Whether an Arbitrable Issue Exists and Whether the Right to Arbitrate was Waived**

Having found that a valid written agreement to arbitrate exists, the undersigned

will briefly examine whether an arbitrable issue exists and whether the right to arbitrate

was waived.  The Court finds an arbitrable issue exists.  The Arbitration Agreement

expressly covers "all legal claims that an individual had or in the future has against the

Company . . . and which arise out of or relate to an individual's application for

employment, employment with the Company, or separation from the Company."  (Doc.

6, Ex. A).  The Agreement specifically includes claims based on "discrimination or

harassment on the basis of race [and/or] gender . . ."  Id.  Accordingly, it is clear that the

present litigation would be covered by the Arbitration Agreement.

Finally, the undersigned finds Defendant did not waive its right to arbitrate.  "A

party may be deemed to have waived its right to arbitrate a dispute 'when a party

seeking arbitration substantially invokes the judicial process to the detriment or

prejudice of the other party.'"  Stone v. E.F. Hutton & Co., Inc., 898 F.2d 1542, 1543

(11th Cir. 1990) (citation omitted).  Here, Defendant immediately responded to Plaintiff's

complaint by filing the instant motion to dismiss.  As such, the Court finds Defendant did

not waive its right to arbitrate.

For the foregoing reasons, the Court must compel arbitration.[5]  9 U.S.C. § 4; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

Accordingly, after due consideration, it is respectfully

**RECOMMENDED**:

1.      Defendant's Motion to Compel Arbitration and Dismiss Case (Doc. 5) be **GRANTED** to the extent that Plaintiff's claims should be submitted to arbitration and the case should be stayed pursuant to 9 U.S.C. §3.  To the extent Defendant seeks to have the case dismissed, the Motion should be **DENIED**.

2.      The case be **STAYED** pending notification by the parties that they have completed the arbitration process and the stay is due to be lifted or the case is due to be dismissed.

3.      The parties be **ORDERED** to file a joint status report with the Court every ninety (90) days until the matter is resolved.

4.      The Clerk be **DIRECTED** to terminate all deadlines and motions, and to stay the case.

---

[5] The undersigned does not believe dismissal of the case due to the arbitrability of Plaintiff's claims, as Defendant requests, is appropriate.  Rather, the undersigned recommends the case be stayed pending the resolution of the arbitration proceedings consistent with the terms of 9 U.S.C. §3.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this ___19th___ day of

December, 2012.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia M. Howard,
United States District Judge

Counsel of Record